**ABRAHAM LINCOLN INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**FRANKLIN SAVINGS AND LOAN ASSOCIATION, a Missouri Federal Savings & Loan Association, and Pulaski Savings and Loan Association, Successor to Franklin Savings and Loan Association, Defendants.**

No. 68C 50(1).

United States District Court
E. D. Missouri, E. D.

June 3, 1969.

As Amended July 25, 1969.

John C. Vogel, St. Louis, Mo., G. Wm. Horsley, Springfield, Ill., for plaintiff.

Robert E. Staed and Richard Wolff, Kappel & Neill, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION

HARPER, Chief Judge.

The plaintiff herein seeks to recover the sum of $15,000.00 plus accrued dividends and interest alleged to be due it as the result of its acquisition of two Investment Certificates, Nos. 583 and 584, issued by the defendant, Franklin Savings and Loan Association. The plaintiff is a resident citizen of the State of Illinois and the defendants are resident citizens of the State of Missouri. Jurisdiction is properly based upon 28 U.S.C.A. § 1332. The law of the State of Missouri is applicable in all respects.

The relevant facts in chronological order are as follows: On March 14, 1966, Robert Holmes came to the offices of Franklin Savings and Loan Association (hereinafter referred to as Franklin) and talked to John Hilmer, the president. After a period of negotiation the defendant Franklin issued two investment certificates to the Dearborn National Investment Company, being Nos. 581 and 582, in the amount of $10,000.00 and $5,000.00 (Exhibits 7 and 8). At this time Holmes gave Franklin a post-dated counter check drawn upon his personal account in a Chicago bank. The check was dated March 15th, and Holmes wrote in a corner thereof, Dearborn National Investment. On the 15th, the defendant deposited the check in the Tower Grove Bank and Trust Company. This same day the Dearborn National Investment Company assigned Investment Certificates Nos. 581 and 582 to the Midwest Life Insurance Company (an Illinois insurance company). In return for these two certificates, Midwest properly issued its Certificate No. 45 showing a $15,000.00 interest in the insurance company. On the 16th or 17th, Midwest Insurance Company telephoned Franklin and spoke to Mr. Hilmer. At that time the assignment was discussed and Midwest requested the transfer of the certificates. On the 18th, Franklin received the original certificates, Nos. 581 and 582, together with the original of the assignment from Dearborn. Certificate Nos. 583 and 584 were then issued by Franklin in the name of Midwest, transferred on the books of the Savings and Loan, and the certificates returned to Midwest, together with the appropriate signature cards. Up to this point not even a hint was given Midwest that Nos. 581 and 582 had been conditionally issued. On March 21st, Midwest deposited the certificates with the Department of Insurance of the State of Illinois as part of their reserve requirement.

On March 30, 1966, it is possible that Holmes' check was first returned for insufficient funds. The evidence on this point is quite inconclusive.

On April 7, 1966, Franklin was notified by the Illinois Department of Insurance that it had the two certificates in its possession. On the 8th, Holmes' check was definitely returned with a notation that the account was closed. By a letter of this date, April 8th, the defendant notified the Department of Insurance that no withdrawal would be permitted against the certificates because the consideration for their issuance had failed and because no signature cards had been returned. On April 9, 1966, Franklin by letter notified Midwest that the consideration had failed and that it was cancelling Certificates 583 and 584.

On April 28, 1966, a payment of $7,100.00 was made to Franklin as partial payment for Certificate Nos. 581 and 582 by one Herbert Johnson, an attorney.

On May 5, 1966, Midwest Life Insurance Company was ordered liquidated and by judicial sale, the plaintiff purchased all of the assets and for our purposes assumed all of the liabilities of Midwest.

The signature cards originally sent to Midwest were never returned by Midwest.

On June 2, 1966, the plaintiff obtained the certificates in question from the Department of Insurance. The plaintiff then requested knowledge as to the amount of interest being paid on the certificates by the defendant. By return letter the defendant noted the cancellation and demanded return of the certificates themselves. This action followed.

Three sections of the Missouri statutes are of particular importance.

Section 369.140 provides:

"1. Each account shall be represented by the account of the holder on the books of the association which shall issue a simple form of savings or investment certificate evidencing the participation value of the account * * *."

Section 369.170 provides:

"1. Accounts shall be transferable only upon the books of the association and upon proper application by the transferee and the acceptance of the transferee as a member upon terms approved by the board of directors."

Section 369.175 provides:

"The accounts of any association shall be liable to sale on execution issued from a court of record by the sheriff and upon such sale, it shall be the duty of the proper officer of said corporation or association to transfer and assign the same to the purchaser on its books and issue certificates to the purchaser * * * and thereupon the purchaser shall be substituted to all the rights, duties and privileges that the original owner had before the sale."

The plaintiff asserts that under section 369.175 it is substituted to all of the rights of its predecessor Midwest. Midwest is alleged to be a bona fide purchaser for value (holder in due course). The defendant urges on the contrary that the plaintiff took the certificates with full notice and knowledge, and further, that the prior cancellation was effective for failure of consideration and because of the lack of the completed signature cards.

In the opinion of the court, judgment must be rendered for the plaintiff and against the defendants in the amount prayed.

The area of law into which this matter takes us is one of little precedent. Savings and loan associations and the laws governing them are peculiar unto the institution itself. No Missouri cases or statutes give any inkling as to whether or not the certificates of participation involved in this litigation are covered by the Uniform Commercial Code, article 3 or article 8. The same is true in relation to the older Uniform Stock Transfer Act. There is some authority for the proposition that certificates of investment in a savings and loan institution are within the coverage of the Uniform Stock Transfer Act. In re Marino's Estate, 88 Dist. & C.O.R. 35 (Penn.). If this rather old authority holds, then Article 8 of the UCC would be applicable. Under those circumstances Midwest, under sections 8–202(4), 8–302 and 8–303, would have been a bona fide purchaser for value and would have taken the certificates free of the defense of failure of consideration.

The difficulty with the position noted is that although such certificates can be made to come within the definition of section 8–102, they do not fit the provisions of 8–105 which states that securities governed by the article are negotiable. While obviously such certificates can be negotiated and pledged to others as collateral, they are peculiar in that they represent in a real sense a participation in the association. For example, in Layton v. Hough, 169 Mo.App. 213, 152 S.W. 410 (Ct.App.1912), the court stated that a domestic association is in reality conducted on a mutual plan and its stockholders are in fact partners in the venture. Such reoccurring analogies create a great deal of uncertainty as to the precise nature of the certificates and their inclusion under the UCC. In view of the fact that no Missouri court has

interpreted this situation, the court deems it inappropriate at this juncture to firmly hold that such coverage exists, though it is of the opinion that it does.

Franklin issued two certificates, Nos. 581 and 582, on March 14, 1966. On the face of these certificates they were absolutely issued, without any condition attached thereto. Obviously, between the original parties, the subsequent failure of consideration would have allowed Franklin to void the transaction. However, Midwest subsequently took these same certificates for value from Dearborn National. At the time of the transaction between Midwest and Dearborn, March 15, 1966, Midwest had no notice nor knowledge of any defect in the certificates, nor notice or knowledge of any defense which might be interposed against them. Of course, at this juncture Franklin also lacked knowledge. But it was Franklin which took the postdated counter check for the large sum without first insuring that payment would in fact be made. Subsequently Franklin, upon what must be proper application, transferred the certificates on its books to Midwest and issued Nos. 583 and 584 to Midwest, thereby accepting Midwest as a full member. It is true that the certificates noted that the funds were transferred from Nos. 581 and 582, but such notation is of no consequence absent knowledge or notice of defect in the two prior certificates. The evidence clearly demonstrates that Midwest was a bona fide purchaser for value, or in the language of article 3 of the UCC a holder in due course. Further, the evidence demonstrates that Midwest fully complied with the laws of Missouri, section 369.170, and the bylaws of Franklin in requesting the transfer (Defendants Exhibit W, section 5 of the bylaws). If there were other conditions of transfer, no evidence was introduced to indicate their existence. All the evidence is consistent with a proper application and acceptance by Franklin in accordance with its bylaws. Therefore, on March 18, 1966, prior to the time that Holmes' check bounced, Franklin, in effect, authenticated Midwest's purchase of Certificates 581 and 582 by transferring membership in the association to Midwest and issuing Certificates 583 and 584.

Under the common law, and clearly by analogy to the UCC, articles 3 and 8, Midwest became and was a bona fide purchaser for value, and took the certificates free from any defenses. There are no Missouri cases discussing the rights of such a purchaser. It is rather clear that in Missouri, as between two innocent participants, the one who must bear the loss is the one who created the situation in which it occurred.

In Neuhoff v. O'Reilly, 93 Mo. 164, 6 S.W. 78 (1887) the court stated:

"\* \* \* And in such cases it is said, in Bank v. Bank, 71 Mo. 195, 'that a bona fide purchaser for value of a non-negotiable chose in action from one upon whom the owner has by assignment conferred the apparent ownership, where the purchase is made upon the faith of such apparent ownership obtains valid title against the real owner, who is estopped from claiming title thereto.' "

See also, Lee v. Turner, 15 Mo.App. 205, and Baade v. Cramer, 278 Mo. 516, 213 S.W. 121 (1919), wherein the court stated:

"Under such circumstances, when one of two innocent persons must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it."

Many Missouri cases support this statement of the rule and its application.

Applying this statement of the law to the instant case it is clear that if Midwest were the plaintiff, it would recover as against Franklin.

In Mobile Federal Savings and Loan Association v. South Carolina National Bank, 269 Ala. 527, 113 So.2d 912 (1959), the Alabama Supreme Court

faced a similar factual situation. The court at page 915 stated:

"We come now to the question of the rights of appellee as an innocent purchaser of the certificate for value, without notice of the failure of consideration for its issuance by appellant. This court has recognized that certificates of stock in corporations are not negotiable, but has held that a species of negotiability attaches to them in Nelson v. Owen, 113 Ala. 372, 21 So. 75, 77, where it was said: '* * * upon principle and authority, it is manifest, the certificate has not in it the elements and characteristics of negotiable or commercial paper. It is not evidence of debt. It is not a promise to pay, nor an order for the payment of money. It is but a muniment of title. While this is true, a species of negotiability, or to employ the usual phrase, sufficiently expressive for all practical purposes, a *quasi* negotiability, attaches to it, adding to its value. And if the owner, in any form, clothes another with the apparent title and the consequent power of disposition, inducing third persons to deal with him as owner, such persons are entitled to full protection, to the same measure of protection extended to the bona fide taker of negotiable or commercial paper * * *.'"

It is this view that the court adopts. Therefore, Midwest as a bona fide purchaser, took Certificates Nos. 581 and 582, and subsequently Nos. 583 and 584, free from the defense of failure of consideration.

The second basic defense urged by Franklin is the lack of the completed signature cards from Midwest. In the court's opinion this defense must likewise fail. As previously noted, the by-laws of Franklin, section 5 (Defendant's Exhibit W) is basically a paraphrase of the Missouri statute. Midwest complied with those bylaws. No evidence was introduced which made return of completed signature cards a condition precedent to complete acceptance by Franklin as a member of the association. If the Board of Directors had established this as a condition, it was not proven, nor was Midwest so notified at any time before Franklin's attempted cancellation of the certificates. The lack of signature cards cannot stand as a barrier to the complete transfer of the certificates. Again, no Missouri cases are in point. However, in Quilter v. Wendland, 403 S. W.2d 335 (Tex.Civ.App.1966) it was held that as between the purchaser and the savings and loan, the contract was completed when the check was deposited and the passbook accepted. By analogy to our situation, upon transfer of Nos. 581 and 582 for Nos. 583 and 584, the transaction was complete. At best, this lack of signature cards would have prevented Midwest from withdrawing any funds.

Franklin's letters of April 8th and 9th to the Department of Insurance and to Midwest notifying them of cancellation of certificates were, therefore, without legal effect. They do, however, stand as an anticipatory repudiation of the contract between Franklin and Midwest.

At this point, one other fact must be noted. At the onset of this litigation, Franklin and its successor, Pulaski, claimed and represented to the court that they had received no money in payment for these certificates. These claims and representations were not true. On April 28, 1966, Franklin received partial payment in the amount of $7,100.00. This case was originally set for trial on July 3, 1968, and was reset to October 23, 1968, due to a legislative committee conflict on the part of the plaintiff's attorney. It was long after the resetting, to-wit, late September, that the defendant submitted the receipt of the $7,100.00, and on October 4th sought to interplead it and bring in other parties, which request was denied by the court, as it was on the eve of the trial and would delay the trial of the case.

Similarly, certain witnesses for Franklin stated that the matter had been written off their books, when in fact the assets of $7,100.00 paid and

$7,900.00 account receivable was carried along with a liability of $15,000.00. In fact, a reading of Exhibit 19 indicates that Franklin had received total consideration ($15,000.00) for the certificates by May 26, 1966. In its brief, Franklin suggests that the plaintiff through Midwest is concealing portions of the relationship of Dearborn, Holmes and Midwest. From what has been said, the opposite is more likely the case.

 When the plaintiff, Abraham, purchased the assets of Midwest, it did of course have knowledge of the purported cancellation of Certificates Nos. 583 and 584. It did not, therefore, take the certificates as a bona fide purchaser or a holder in due course in the traditional sense. However, it did take these certificates *through* such a person, Midwest. Section 369.175 RSMo 1959, V. A.M.S. makes provision for what happens in the event of an execution sale. It provides that upon such sale the purchaser is to be substituted to all the rights and privileges of the original owner and requires the association to transfer the certificates to the purchaser on its books. No provision is made for the type sale which occurred here, namely a liquidation sale of an insurance company under court order and with court approval. Clearly what happened was a judicial sale. Similarly, a sale on an execution is a judicial sale. Again, there are no Missouri cases in point. However, it is rather clear that the intent of this statute is to apply to all types of judicial sales and, therefore, would apply to the instant case. Therefore, Abraham was substituted for Midwest and in spite of its knowledge acquired the precise rights which Midwest had at the time of the sale to the plaintiff.

This result is in accord with the doctrines more recently promulgated by the Missouri Legislature in the adoption of the UCC. Under article 3, section 3–201(1), one taking through a holder in due course obtains the rights thereof unless he was a prior holder with knowledge. The same is true of the bona fide purchaser under article 8, section 8–301.

The plaintiff, therefore, at the time of sale acquired the rights of Midwest and therefore took free of the defense of failure of consideration. The defendant was therefore also required to transfer the certificate to plaintiff, but the defendants refused to do so, asserting invalidity. Therefore, defendants again breached the contract and became liable to the plaintiff for the value thereof.

Therefore, it is ordered that judgment be entered in favor of the plaintiff and against the defendants in the amount of $15,000.00, plus dividends from March 18, 1966, which should have been but were not paid out on Certificates Nos. 583 and 584, plus interest at the rate of six percent on said sum from the date of judgment.

The court adopts this memorandum as its findings of fact and conclusions of law and the clerk will prepare and enter the proper order in conformity with this opinion.