Gerald W. JONES et al., Plaintiffs-Respondents,

v.

UNITED SAVINGS AND LOAN ASSOCIATION, Defendant-Appellant.

No. 35156.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Aug. 27, 1974.

Motion for Rehearing or for Transfer Denied
Oct. 15, 1974.

Application to Transfer Denied
Dec. 16, 1974.

Sestric, Sestric, Sweet & McGhee, St. Louis, for defendant-appellant.

Sapp, Woods, Dannov & Orr, Carl F. Sapp, Columbia, and Martin Schiff, Jr., Webster Groves, for plaintiffs-respondents.

GUNN, Judge.

Defendant-appellant, United Savings and Loan Association, appeals from a declaratory judgment of the circuit court finding plaintiffs-respondents, Gerald and Carrie Jones, husband and wife, to be the owners of two savings certificates issued by Unit-ed Savings and ordering payment of the face value of the certificates, plus interest. We hold that United Savings is not obligated to honor payment of the certificates to the Joneses and thereby reverse the judgment of the trial court. The pertinent facts leading to our ruling follow.

In order to shore up the financially distressed First State Bank of Bonne Terre, the bank's president, James B. Crismon, made arrangements with United Savings to borrow $875,000. Part of the convoluted financial arrangements for the loan required Crismon to issue checks to United Savings for $155,000 on the date of the loan closing and for United Savings to issue Crismon and his wife two savings certificates of $20,000 each. August 5, 1970 was the closing date in Bonne Terre for the Crismon loan, and United Savings issued the two $20,000 certificates. Crismon, in turn, erroneously gave United Savings' officer checks totaling only $105,000—not $155,000 as obligated. The next day, August 6, United Savings discovered the $50,000 shortage, and a telephone call was made to Crismon who said he would check into the matter. Although Crismon did acknowledge the $50,000 deficiency to United Savings, he never did cover the deficit, and on August 18, after repeated demands upon Crismon to pay the $50,000, United Savings notified Crismon in writing that the certificates had been cancelled. Meanwhile, during the period between the issuance and cancellation of the certificates, Crismon and plaintiff Gerald Jones were busy with their own financial manipulations.

Jones was president of the Bank of Keytesville and also a director of Crismon's bank, The First State Bank of Bonne Terre. On August 7, 1970—the day after Crismon had been advised by United Savings of the shortage—Jones, as president of the Keytesville Bank loaned the Crismons $50,000 and received the two United Savings $20,000 certificates as collateral for the loan. The certificates were endorsed by the Crismons and assigned to

the Bank of Keytesville by separate document. At the same time, Jones was trying to sell his stock in the Bank of Keytesville in order to pay back a personal loan for $90,500 he had received from The First State Bank of Bonne Terre. Jones was able to secure buyers for his Keytesville Bank stock, but as a condition of the sale, Jones agreed with the buyers to purchase back the Crismon $50,000 note and the two United Savings certificates securing it for the discounted sum of $27,500. On March 9, 1971, after the new owners of the Keytesville State Bank had made request of United Savings and were refused transfer of the two certificates, Jones did purchase the Crismon note and the stock certificates for $27,500. Jones then requested United Savings to transfer the two certificates to his name, but his request was also refused. Jones and his wife thereupon filed suit to require United Savings to transfer the ownership of the two certificates to them alleging that they were holders in due course of the two certificates free from any defense that United Savings might have available. The trial court found that there was no failure of consideration for the issuance of the two certificates to the Crismons; that the negligence of United Savings permitted the certificates to be put into commerce; that the certificates were properly pledged to the Joneses as loan security under § 369.170 RSMo 1969, V.A.M.S., which relates to the transfer of savings and loan association accounts.

We disagree with the trial court's findings. We first determine that the securities in question were not negotiable instruments. § 400.3–104 of the Missouri Uniform Commercial Code [1] provides:

"(1) Any writing to be a negotiable instrument within this article must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and

(c) be payable on demand or at a definite time; and

(d) *be payable to order or to bearer.*

(2) A writing which complies with the requirements of this section is

\* \* \* \* \* \*

(c) a 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;"

\* \* \* \* \* \*

(Emphasis Added)

■ The two certificates involved provided only that they were held by the Crismons. There was no provision for their being payable to order or bearer. It was recited on the face of each certificate that it was subject to the laws of Missouri. Since these certificates were not payable to order or bearer, they were not negotiable instruments.

Second, since the certificates were not negotiable, there can be no holder in due course, and the Joneses are therefore not holders in due course of the certificates as they allege. § 400.3–805 RSMo 1969, V.A. M.S., specifically provides that there can be no holder in due course of an instrument which is not payable to order or to bearer. Thus, under § 400.3–306 RSMo, V.A.M.S., the Joneses took the certificates subject to the defense of failure or want of consideration.

■ Third, United Savings did have a right to cancel the two certificates. Crismon was deficient in payment to United Savings by $50,000 at the loan closing, and United Savings cancelled the two $20,000

---

1. § 400.3–104 RSMo 1969, V.A.M.S.

certificates by reason of the shortage. At the loan closing, United Savings had received $105,000 from Crismon, but it chose not to apply any of that $105,000 to the savings certificates. Instead, the certificates were cancelled because of the deficit. As creditor, United Savings was entitled to apply the unspecified payments of the debtor, Crismon, to any account owing. Title Insurance Corp. v. United States, 432 S.W. 2d 787 (Mo.App.1968); Madison v. Dodson, 412 S.W.2d 552 (Mo.App.1967). There was, therefore, no payment or consideration given for the two certificates. United Savings did not have to apply the $105,000 to the savings certificates, and it did not.

We have concluded that the two certificates were not negotiable instruments; that the Joneses were not holders in due course; that there was a failure of consideration for the certificates; and that they were properly cancelled. The Joneses, therefore, have nothing to recover.

The Joneses rely on Abraham Lincoln Insurance Company v. Franklin Savings and Loan Association, 302 F.Supp. 54 (E. D.Mo.1969), aff'd, 434 F.2d 264 (8th Cir. 1970), and argue that in the Abraham Lincoln case the validity of savings certificates was upheld where there was a transfer to a third party of the certificates on the books of a savings and loan association after the certificates had been purchased with an invalid check. The Abraham Lincoln case is readily distinguishable from the situation at hand and is not apt here. In Abraham Lincoln, the savings and loan association had in fact transferred the certificates to the transferee on the books and account records of the savings and loan association upon proper application in accordance with § 369.170 RSMo 1969,[2] V.

A.M.S. Here, there was no application for transfer under § 369.170 until the certificates had long been cancelled. In Abraham Lincoln, at the time of transfer the certificates were viable. Here, the certificates had been cancelled before application for transfer of account, and no transfer was ever made. Also, in Abraham Lincoln, both the District Court and Circuit Court of Appeals noted that partial, if not full consideration, had at sometime been paid for the certificates; not so in this case.

The judgment is reversed.

CLEMENS, Acting P. J., and McMILLIAN, J., concur.

## ON MOTION FOR REHEARING

PER CURIAM:

On motion for rehearing, respondent argues that the certificates of deposit in question fall within the ambit of Article 8 [§ 400.8 RSMo 1969, V.A.M.S.], not Article 3 [§ 400.3 RSMo 1969, V.A.M.S.], of the Missouri Uniform Commercial Code and that, therefore, no defenses can be asserted by United Savings since the possessor of the certificates (respondent) is a holder in due course. Respondent also argues that if the certificates are held to be a hybrid of Article 3 and Article 8, then Abraham Lincoln Insurance Co. v. Franklin Savings and Loan Association, supra, controls and that between two innocent parties, the party who creates the situation resulting in loss—in this case, United Savings and Loan—must bear the loss.

We hold that these savings certificates are not within the purview of Article 8 of the Missouri Uniform Commercial

2. § 369.170 RSMo 1969, V.A.M.S.,—"1. Accounts shall be transferable only upon the books of the association and upon proper application by the transferee and the acceptance of the transferee as a member upon terms approved by the board of directors.
2. The association may treat the account holder of record on the books of the association as the owner for all purposes without being affected by any notice to the contrary, unless the association acknowledge in writing, or there is served upon it by an officer empowered to make service of legal process, notice of a pledge in which case notice of the pledge shall be entered upon the record of the account and the pledgee shall be protected."

Code [§ 400.8 RSMo 1969, V.A.M.S.], because they were not issued in a class or series, nor are they a medium for investment as meant by § 400.8–102 RSMo 1969, V.A.M.S. Article 3 [§ 400.3 RSMo 1969, V.A.M.S.] encompasses isolated transactions, as was the case here, whereas Article 8 is directed to multiple transactions in which a group of promises, all for the same amount and all due at the same time, are made to multiple parties with the intention that the security evidencing their promises will be traded. The saving certificates in question here clearly do not meet the definitional requirements of Article 8, and that article is not applicable here.

The contention relying on Abraham Lincoln has already been discussed.

The motion for rehearing is overruled.

All Judges concur.