**RUCKMAN AND HANSEN, INC., an Indiana Corporation, Plaintiff-Respondent,**

v.

**STATE HIGHWAY COMMISSION of Missouri, Defendant-Appellant.**

**No. KCD 27875.**

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1976.

Motion for Rehearing and/or Transfer Denied Jan. 31, 1977.

Application to Transfer Denied March 14, 1977.

Bruce A. Ring, Alfred Kent Morlan, Curtis F. Thompson, Jefferson City, for defendant-appellant.

John W. Inglish, Michael P. Riley, Carson, Inglish, Monaco & Coil, Jefferson City, Gunn & Gunn, St. Louis, for plaintiff-respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

Ruckman and Hansen, Inc., brought suit against the State Highway Commission for breach of contract. Trial to the court without a jury resulted in a judgment in favor of Ruckman for $904,263.07, plus interest of $434,046.27, or a total of $1,338,309.34.

On this appeal the Commission raises a number of objections which will be treated in sequence. The judgment is modified and as modified, affirmed.

Ruckman was awarded a contract by the Commission for the construction of the concrete deck and incidental hand rail and conduit system for lighting and signs on the Chain of Rocks Bridge over the Mississippi River which carries Interstate 270. The bridge was a dual structure with each structure being 5,411 feet in length. The bridge deck, or driving surface, was supported by piers, girders and beams which were constructed by other contractors. The driving surface was shown on the plans to gradually widen for the east 650 feet in order to accommodate acceleration and deceleration lanes for an interchange at that location. From a point 650 feet east of the west end of the bridge, the deck was to be a constant 30 feet in width.

The plans upon which Ruckman based its bid and which became a part of the contract between Ruckman and the Commission showed the bottom of the deck to be arched or haunched at certain points above the tops of the beams and girders which supported the deck. A haunch is created by constructing the forming for the bottom of the deck in such a manner that the bottom of the deck is elevated above the tops of the beams or girders. A haunch can be fixed or variable in nature. A fixed haunch is one which is of a single dimension along the entire length of the beam or girder and a variable is one which varies along the length of the beam or girder.

The plans also called for reinforcing steel bars to be placed in the concrete of the deck, curbs and parapet walls. There was a median barrier separating the east and westbound lanes which also contained steel bars. Some of the bars to be used in the curbs, walls and median were to be bent into a rectangular shape. The plans specified the dimensions of these bars. In the case of straight bars, the specifications allowed a variation of one inch plus or minus from that specified. In the case of bent bars, a variation of one-half inch more or less was allowed from that stated in the specifications.

Ruckman produced substantial evidence to show that the girders and beams upon which the deck was to be constructed were not constructed as shown by the plans upon which it had based its bid. Further, the Commission required Ruckman to change from a fixed to a variable haunch in constructing the deck. Mr. Ruckman, president of Ruckman, testified his company's bid was based on the plans which called for a fixed haunch throughout the length of the bridge except for the east 650 feet. Ruckman further testified the change from the fixed to a variable haunch caused a greater amount of labor and material used in making forms. The difference arose from the fact Ruckman had bid the job

based on reusing the forms once they had been constructed to the dimensions of the fixed haunch. When the variable haunch was required, then it became necessary for the forms to be torn up and new forms constructed about every 20 feet of the length which had been shown on the plans to be a fixed haunch.

The contract set out a procedure known as a force account by which Ruckman was to be compensated for extra work. Ruckman testified the actual increase in his cost because of the change from a fixed to a variable haunch was $690,455.81. Calculated under the force account method, he testified this extra cost amounted to $601,686.36.

Ruckman further testified the steel bars were ordered from his supplier based on the variations allowed by the specifications in the contract. He further testified the bars as delivered met the specifications with the allowable variations. However, it soon became apparent when Ruckman began work that only bars which fit the exact dimensions specified with no variation could be used. This meant practically all bars had to be cut or rebent in order to make all of them meet the exact specifications with no variation. The Commission also produced evidence to show that inspectors on the job rigorously enforced all of the clearance measurements called for in the plans. Ruckman's evidence showed these clearance requirements could not be met by using the steel bars without allowable variations. Only bars meeting the exact measurement would allow for the specified clearance distances.

Ruckman stated his actual extra cost involved in cutting and reshaping the steel bars to make all of them conform to the exact dimensions with no variation was $264,281.30. This amount calculated under the force account method was $243,261.07. The court arrived at the amount of the judgment by taking the total of $844,947.43 as the total of the concrete and steel extra expense. From this the court deducted $5,846.00 paid by the Commission for extra expense, $3,181.68 which Ruckman had claimed for cleaning steel rods, $61.72 which Ruckman had claimed for storm damage, and $594.96 which Ruckman had claimed for flood clean up. After deducting these amounts, the total awarded to Ruckman was $835,263.07. To this the court added $69,000.00 which the Commission had charged against Ruckman for delay in completion of the project. The contract provided a forfeiture by Ruckman of $250.00 for each day completion was delayed beyond the specified date. Adding the $69,000.00 made the total of $904,263.07 which the court awarded to Ruckman. Interest for eight years was added to this amount to make the total judgment of $1,338.309.34.

The Commission lists in its brief eleven points. Of these, three relate to a complaint concerning the admission of a certain exhibit and evidence over its objection and a failure to admit testimony. In a court tried case, " 'the appellate court considers such of the evidence as it deems admissible, and excludes from consideration evidence improperly admitted.' " *Butcher v. McClintock*, 373 S.W.2d 917, 922 (Mo.1963); *Hunt v. Easley*, 495 S.W.2d 703, 707[1] (Mo.App. 1973). The challenged evidence related to a letter from the Commission's engineering firm prior to bids being advertised, and to the admission of a copy of Ruckman's original bid sheet. The excluded evidence related to testimony showing Ruckman's employees were not properly supervised.

■ Without deciding whether or not the evidence of which complaint is made was admissible or not, this court has concluded the judgment is supported by substantial evidence without considering any of the challenged evidence. Under *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976) the judgment must be affirmed unless there is no substantial evidence to support it or unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. The judgment in this case is supported by substantial evidence and is not against the weight of the evidence and does not erroneously declare or apply the law, with the exceptions hereinafter noted.

The Commission complains the judgment is excessive because it is based in part upon delay to Ruckman being able to commence work and in part upon Ruckman having to obtain an easement for access to the east end of the bridge. There is no dispute Ruckman was not able to commence its part of the work until September 14, 1964, after it had been instructed to commence work on August 10, 1964. This delay was brought about by the failure of the contractors to have the beams and girders installed, upon which Ruckman had to work, until September 14. As shown in the calculation by which the court reached the amount of its judgment, it is apparent the court did not allow any damages to Ruckman because of Ruckman's delayed commencement of work, nor was any amount allowed Ruckman for the $5,000 it had to pay for access to the east end of the bridge to commence work.

■ The Commission complains the judgment is excessive and in error because it is based upon the court's interpreting only a part of the contract without construing the contract in its entirety. The Commission urges the plans showed a finished profile grade line and this should have been considered along with the fact the plans did show a fixed haunch. Mr. Ruckman testified and produced two civil engineers who qualify as experts. All three of these witnesses testified the plans called for a fixed haunch. They further testified the construction of a bridge with a fixed haunch was very common and this bridge could have been constructed with a fixed haunch according to the plans and specifications contained in the contract. The Commission made no objection to the qualifications of these witnesses or to their testimony.

In fact the Commission admitted it forced a change from a fixed to a variable haunch in a letter written by its chief engineer in 1968 after the bridge was completed. Mr. Snider wrote "on the item of forming, we are ready to pay for any additional costs that might have resulted from the change to a variable haunch on some of the spans." Thus, the Commission has already defined the issues in this case as being the amount of damages and not whether a change from a fixed to a variable haunch was made.

The above constituted substantial evidence upon which the court could base its finding that Ruckman was forced to change from a fixed haunch construction, as called for in the contract, to a variable haunch. Under *Denton Construction Company v. Missouri State Highway Commission,* 454 S.W.2d 44 (Mo.1970) this supplied the requisite legal foundation for a recovery by Ruckman.

■ Further, the extra costs incurred by reason of the failure of the steel bars to fit unless cut and bent to the precise dimension called for was supported by substantial evidence. The Commission argues the typical sections shown on the plans which showed the precise dimensions with the required clearance was misconstrued by the court. However, the Commission overlooks the substantial evidence produced by Ruckman to show the cause of the extra expense on steel bars to be the failure of the bars to be usable unless they were the exact dimension without any variation even though such variation was allowed by the specifications.

The Commission states the judgment is in error because it allows damages resulting from adverse weather conditions and labor problems. As already pointed out, the computation made by the court in arriving at its judgment did not allow any item of damage for weather conditions and labor problems.

■ The Commission contends the judgment is in error and is excessive because it returns to Ruckman the $69,000.00 in liquidated damages which the Commission had withheld because of the delay in completing this project. In the argument under this point the Commission simply states it was proper for the parties to agree on a damage figure of $250.00 per day for each day the contract was uncompleted beyond the deadline. No effort is made to analyze the time Ruckman claimed to have been delayed beyond its control. The Commission, in fact, completely fails to make any analysis of the

days lost and the cause therefor. However, this court has analyzed the testimony of Ruckman in which the number of days lost were detailed and the reasons assigned for each delay. This court finds Ruckman was claiming a total of 143 days lost because of jurisdictional disputes among various labor unions. This delay cannot be excused because under the contract Ruckman assumed the risk of time lost because of labor difficulties. Therefore, Ruckman should have been assessed a penalty of $250.00 for each of 143 days, or a total penalty of $35,750.00. For that reason, the judgment is ordered modified by reducing it by $35,750.00 and to award Ruckman actual damages of $868,-513.07. Of course, this also necessitates a recomputation of interest.

The Commission also makes the claim the judgment is in error because it awards damages to Ruckman for a change in the slope of the bridge deck overhang. Mr. Ruckman specifically testified no extra compensation was being claimed because of the change order which was executed which called for the change in the slope of the overhang. It does not appear the court awarded any damages for this and the Commission makes no effort to demonstrate that the court in fact awarded damages partially based on this change.

The Commission contends the judgment is excessive because it allows compensation to Ruckman for quantities of concrete and steel over and above that provided in the contract without any proof of gross error, mistake or fraud. The argument under this point contends Ruckman was claiming compensation for concrete to lay the deck at a greater thickness than the seven and one-half inches called for in the plans. Although there was testimony to indicate the deck at some points exceeded the seven and one-half inch depth specified, an analysis of the testimony and the computation used by the court in arriving at its judgment does not indicate the judgment allows Ruckman compensation for additional concrete or steel. The compensation allowed was to cover additional labor and material other than steel and concrete materials costs be-cause of the change in the forms which was required to be made and because of the reworking of the steel bars by cutting or rebending.

The Commission's last point contends the judgment is erroneous and excessive because not supported by evidence as to the amount of damages because Ruckman's evidence merely consisted of its bid price and the amount of the actual cost incurred. As heretofore stated, Mr. Ruckman testified both as to the amount of actual damages incurred and also as to the amount of such damages as calculated under the force account method provided by the contract. The court used the amounts as calculated under the force account method. The Commission has not challenged the amounts as calculated under the force account method nor did it introduce any evidence to controvert or challenge any calculation of damages introduced by Ruckman. In its argument it makes no effort to demonstrate any error, or lack of evidence, to support the calculations made by Ruckman. Instead the argument consists of abstract statements of law which are unconnected to the evidence.

The Commission makes no other allegations of error. It is significant the Commission does not make any complaint about the manner in which Ruckman performed this work. A review of all the evidence convinces this court the Commission was principally resisting the amount of this claim. However, the Commission made no effort to refute the calculation of damages Ruckman presented, but has only challenged the matters discussed herein.

The judgment is supported by substantial evidence except for the part which awarded the $69,000.00 in liquidated damages withheld to Ruckman.

The judgment is modified by fixing Ruckman's actual damages at $868,513.07 and interest on this amount up to the time of judgment is $416,886.24. The judgment as modified in the amount of $1,285,399.31 is affirmed.

All concur.