## In Re J. R. O'BANNON ESTATE; Final Settlement of J. M. O'BANNON, Executor.

**Kansas City Court of Appeals, March 7, 1910.**

1. **EXECUTORS AND ADMINISTRATORS: Commission: Real or Personal Property.** A testator bequeathed his estate to certain heirs and appointed his brother executor of his estate, and the will gave the executor power to sell and dispose of the real estate "for the purposes of the will." The will directed that after the payment of his debts and certain legacies therein provided, the estate should be divided between the residuary legatees, by the executor, "in money, so as to avoid the expense and necessity of partition." After payment of the debts and the legacies, on the advice of the executor, the heirs made a voluntary partition of the land, which was worth in excess of $25,000. The executor was not entitled to treat the land so partitioned as personal property and to collect a commission of five per cent on its value.

2. **WILLS: Construction.** Under the will the testator devised the land not to the executor but to the residuary legatees, subject to power of sale conferred on the executor for the purposes of paying debts and legacies and making distribution among the residuary legatees.

3. ——: **Equitable Conversion.** Although money that is to be invested in land, and land that is to be turned into money are to be considered as that species of property into which they are directed to be converted, yet the beneficiary may elect to take the property as it actually is, and thereby save the commission.

4. ——. The doctrine of equitable conversion is not so applied as to cut out and dominate the title of the heir, except where the donee of the power takes a fee by necessary and inevitable implication, or where such fee is in express terms conferred upon such donee; but the title remains vested in the heirs until the donee has actually exercised it.

5. ——. Under this will a conversion did not occur at the death of the testator. Real estate is converted into personalty immediately on the death of the devisor, only where the direction to sell is positive, without limitation as to time, and without discretion on the part of those to whom the power to sell is delegated. If discretion is given, the conversion does not take place until the sale is made.

6. ——————: **To what Persons not Applicable.** The doctrine of equitable conversion is founded on the maxim that equity will regard as done that which ought to be done, but the effect is confined solely to the devolution of property and to the rights of persons claiming the property itself under a will or contract. It does not apply to persons, such as the executor in this case, whose claims or rights are purely incidental.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman,* Judge.

AFFIRMED.

*Sangree & Bohling* and *T. H. Williams* for appellant.

(1) The direction to sell contained in the will being absolute, the land was converted into personalty on the day of the testator's death. Compton v. M'cMahan, 19 Mo. App. 498; Craig v. Leslie, 3 Wheat. (U. S.) 577; Peter v. Beverly, 10 Pet. (U. S.) 532; Rinehart v. Harrison, 1 Bald. (U. S.) 184; Cropley v. Cooper, 19 Wall. 167; High v. Worley, 33 Ala. 196; Baker v. Copenbarger, 15 Ill. 103; Greenwood v. Greenwood, 178 Ill. 387; Brolaski v. Gally, 51 Pa. St. 509; Evans' Appeal, 63 Pa. St. 183; Yerkes v. Yerkes, 200 Pa. St. 419; Wayne v. Fouts, 108 Tenn. 145; Fazewell v. Smith, 1 Rand (Va.) 313; Com. v. Martin, 5 Munf. (Va.) 121; Harcum v. Hudnall, 14 Gratt. (Va.) 369; Trelawny v. Booth, 2 Atkyns 307; 2 Underhill on Wills, 955; Donaldson v. Allen, 182 Mo. 628. (2) It follows therefore that the executor is entitled to compensation for his services by way of five per cent commission upon sale of all the real estate. Secs. 223, 245, R. S. Mo. 1899. (3) The will created an active trust in the executor, and he took the legal title to the real estate. Pugh v. Hayes, 113 Mo. 424; 1 Perry on Trusts, secs. 305, 359, 386a; 2 Perry on Trusts, secs. 508, 509, 510 and 511; Hill on Trusts (Am. Ed.), 362. (4) It was in the power of the executor to have sold the lands to

others than the residuary legatees, and to have received his commission. It follows that since he sold to the residuary legatees that he is entitled to the same. In the Matter of Curtis, 15 Misc. Rep. (N. Y. Surrogate Ct.) 545; Tompkins v. Tompkins, 18 S. Car. 1; Jones v. Jones, 39 S. Car. 247; In re Buchanan, 5 N. Y. Sup. 351; Deas v. Spann, Harp Ed. (S. Car.) 176; Gist v. Gist, 2 McCord Eq. (S. Car.) 473.

*George F. Longan* and *Montgomery & Montgomery* for respondent.

(1) The doctrine of equitable conversion has no application in this cause. 3 Pomeroy's Equity (1 Ed.), sec. 1166; 1 Pomeroy's Equity, sec. 365; Frank v. Bollans, L. R. 3 Ch. 717; Story's Equity (9 Ed.), sec. 792; In re Swift Estate, — N. Y. —; 32 N. E. 1096; Connell v. Crosby, 210 Ill. 390. (2) There is not one word in the will expressly passing the fee title executor. When not so expressed, it can only result from an irresistible and imperative intention ascertained from the entire instrument. Compton v. McMahan, 19 Mo. App. 498; Eneberg v. Carter, 98 Mo. 651; Williams v. Lobban, 206 Mo. 410. (3) There are no such directions in the will, either as to time or manner of sale as converted the land into personalty as of the date of the death of the testator. Morris v. Stephenson, 128 Mo. App. 340. (4) The heirs had a right at any time before the executor actually sold the land to make partition of it in kind among themselves. 2 Underhill on Wills, sec. 719; Craig v. Leslie, 3 Wheat. 578 (Curtis Ed.), p. 296; Ency. of Law (2 Ed.), p. 480, sec. 5, title, Conversion and Reconversion, and authorities cited; Tiedeman's Equity, sec. 17; Story's Equity (9 Ed.), sec. 793. (5) The executor did not sell the land, did not receive the purchase money or distribute the same among the devisees, and is not entitled to commission on the value of the land, as money arising from the sale of real estate. R. S. 1899, sec. 223; In re

Tilden, 44 Hun 442; Metcalf v. Callis, 43 N. J. Eq., 148; 10 Atl. 804; Anderson's Exec. v. Prewitt, — Ky. —; 114 S. W. 275; Phoenix v. Livingston, 101 N. Y. 454; 2 Ency. of Law (2 Ed.), pp. 1298-9, note 1; Key v. Jones, 52 Ala. 238; Buxton v. Shaffer, 43 W. Va. 206, 27 S. E. 319; Brace v. Lorillard, 62 Hun 216; Brace v. Brace, N. Y. S. Rep. 146; In re Ross, 68 N. Y. S. 373, 33 Misc. Rep. 163; In re Hall, 89 N. Y. S. 939, 97 App. Div. 258; Matson & May v. Pearson, 121 Mo. App. 141.

JOHNSON, J.—The circuit court entered judgment sustaining an exception to the final settlement of J. M. O'Bannon, executor of the estate of John R. O'Bannon, deceased, and the executor appealed from that judgment. The exception which was filed by the residuary legatees relates to a charge made by the executor of a commission of five per cent on $25,000. This sum, the executor contends, was realized from the sale of land which, by the terms of the will, was converted into personalty. The respondents contend that there was no conversion, at least as far as the demand of the executor for a commission is concerned, and that there was no sale made by the executor, but that the respondents themselves voluntarily partitioned the land.

The residuary legatees were the two daughters and a grandchild of John R. O'Bannon, who died in 1905, leaving a large estate of real and personal property. The provisions of his will of present concern are as follows:

"Item 3. After the payment of my debts and the foregoing legacy to my wife, I will, devise and bequeath to my daughter, Sallie B. Price, and my daughter, Fannie F. Ramsey, and my granddaughter, Annie Rubey Dillard, the only child of my deceased daughter, Mary A. Dillard, the rest and residue of my estate, share and

share alike, subject to the power of sale and distribution in my executor hereinafter set forth.

"Item 4. I nominate and appoint my beloved brother, James M. O'Bannon, as the executor of this will. It is my wish that he should not be required to give bond as such executor, since that would be an additional burden to him, and I repose the most unlimited confidence in him.

"My executor is hereby given power to sell, transfer and alien any of my property, whether real or personal, at such reasonable figures as he can obtain, and my executor is hereby empowered and authorized to make any deeds of conveyance to any of my real estate, and to sell the same to pay debts or to distribute my estate. It is my will and direction that the expense of obtaining orders of sale from the probate court be entirely avoided, but that my executor shall have power to sell and convey without such orders, and for the purpose of this will.

"I will and direct that my estate be closed up by my executor as speedily as possible, and that after paying the aforesaid legacy to my wife and all my debts and funeral expenses, my estate remaining shall be divided by my executor among my two daughters and my granddaughter aforesaid, in money, so as to avoid the expense and necessity of a partition."

The estate was deeply in debt, and the personal property was insufficient to pay the debts. Consequently, the executor found it necessary to sell some of the real estate to pay debts and legacies. When he took charge of the estate, it embraced 1010 acres, encumbered by a number of mortgages aggregating $16,500. He sold 249 acres and out of the proceeds, paid all demands and encumbrances except a mortgage lien of $2000. This left 761 acres for division among the three residuary legatees. The executor could have sold this land and divided the proceeds, but, instead, he encouraged the legatees to divide it.

They followed his advice and with his aid made a division. Each took a tract of land and received a deed from the executor for that tract. Two of the tracts were valued at $9000 each, the third at $10,500. The heir who took the third paid the executor $1500 to make the division equal. Each gave the executor a receipt in the amount of the value of the land deeded to her and in his final settlement the executor takes credit for these amounts as paid in distribution.

The question to be decided is whether the executor is entitled to a commission of five per cent, under the statute (section 223, Revised Statutes), on the agreed value of the land deeded to the residuary legatees in effectuation of their voluntary division of the estate. The trial court decided that question adversely to the executor and adjudged that "the executor did not sell the real estate to said heirs and reduce the same to money as he was empowered by the last will and testament of the testator, but that the heirs made a voluntary partition among themselves, taking the same at a valuation of $28,500, and that the heirs paid to the executor the sum of $1500 to equalize the shares and which sum of $1500 was all the money received by the executor on account of said land and that the executor has wrongfully credited himself . . . with a commission of five per cent on the sum of $25,000, making $1250, and the court finds the executor was not entitled to charge or exact such commission and the same is disallowed," etc.

The statute provides that as compensation for his services, the executor shall be allowed a commission of five per cent "on personal property and on money arising from the sale of real estate." On the hypothesis that at the time of the voluntary partition of the land by the heirs there had been no equitable conversion of the land, we think it is clear the position of the executor that he made a sale to the heirs and, therefore, is entitled to a commission as for the sale of real estate

cannot be maintained.  A careful analysis of the will convinces us that the testator devised the land not to the executor but to the residuary legatees, subject to power of sale conferred on the executor for the purposes of paying debts and legacies and of making distribution among the residuary legatees.  Evidently, the testator wished to avoid for the heirs the expense and trouble of a partition in court, but there is not a word in the will to indicate an intent to pass the fee to the executor except for these special purposes, and there is nothing in the instrument that prevented the heirs from making a voluntary partition after the debts of the estate and the special legacies were paid.  [Compton v. McMahon, 19 Mo. App. 498; Eneberg v. Carter, 98 Mo. 651; Williams v. Lobban, 206 Mo. 410.]  In Compton v. McMahon, we said:

"Nothing is better established than this principle, that money directed to be invested in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted.  Yet the beneficiary may elect to take the property as it actually is, and thereby save the commission."  And in Eneberg v. Carter, the Supreme Court say, speaking through SHERWOOD, J.: "I have been able to find no case where the doctrine of equitable conversion has been so applied as to cut out and dominate the title of the heir, except where the donee of the power took a fee by necessary and inevitable implication, or where such fee was in express terms conferred upon such donee; otherwise the title remains vested in the heirs until the donee of the power actually exercises it."

But it is argued very earnestly that the conversion of the land into personalty occurred at the death of the testator and, therefore that the executor is entitled to treat the land partitioned as so much money.  We regard the case of Compton v. McMahon, *supra,* as an

authority against this argument and as supporting the view that the terms of the will preclude the conclusion of a conversion at the time claimed, under the rule that "real estate is converted into personalty immediately on the death of the devisor only where the direction to sell is positive, without limitation as to time and without discretion on the part of those to whom the power to sell is delegated. If discretion is given, the conversion does not take place until the sale is made."

Moreover, we believe the executor does not belong to a class of persons to whom the right to invoke the doctrine of equitable conversion is available. That doctrine is founded on the maxim that equity will regard as done that which ought to be done, but its effect is confined solely to the devolution of property and to the rights of persons claiming the property itself under a will or contract. It does not apply to persons whose claims or rights are purely incidental. [Pomeroy's Equity, sec. 1166.] The land was real property at the time of its division. There was no sale of it to the heirs but, instead, a voluntary partition of it by them, and it follows that the court was right in disallowing the claim for a commission. The judgment is affirmed. All concur.