**Mary I. SCOTT and William F. Scott, Appellants,**

v.

**Bettie DOUGAN, et al., Respondents.**

**No. KCD 27096.**

Missouri Court of Appeals, Kansas City District.

Sept. 2, 1975.

John W. Newhart, Newhart & Newhart, Savannah, Theodore J. Furry, Birmingham & Furry, Kansas City, for appellants.

Scott Ross and Wm. Rex Beavers, Beavers, Thomson, Beavers & Ross, Maryville, Louis Kranitz, Kranitz & Kranitz, St. Joseph, for respondents.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

This is an appeal from two separate proceedings consolidated for hearing and disposition in the circuit court. One, Case No. 5185E, was an original proceeding for partition brought by Mary I. Scott and William F. Scott. The other, Case No. 5197E, was an appeal by the Scotts from an order of the Probate Court of Nodaway County authorizing the sale of the same property by the executors under the will of Floyd A. Kiser. The circuit court denied partition and affirmed the Probate Court's order of sale.

Floyd A. Kiser died testate on August 18, 1972, possessed of the land in question and survived by seven children of whom the appellant, Mary I. Scott, is one. On August 29, 1972, the will was admitted to probate, and the co-executors designated therein were appointed on August 31, 1972. The will devised a one-half interest in one tract to the testator's daughter Rosalee Walton; and the remaining one-half of that tract, together with all other property, was devised equally to all seven children. The will further nominated Charles Kiser and Kenneth Laughlin as co-executors with a direction that they not be required to furnish bond. The will further provided:

"I authorize, but do not direct, my Co-Executors to take charge of any real property in my estate and to sell, lease, mortgage, assign, pledge or otherwise convey any real or personal property of my estate without obtaining any order of the court having jurisdiction over the administration of my estate, upon such terms and conditions, at such time or times and for such consideration as my Co-Executors shall deem proper, within their sole discretion."

On the very same day that the co-executors were appointed by the Probate Court, the Scotts filed suit for partition in the circuit court with respect to the two tracts of real estate owned by the testator at the time of his death. Eight days thereafter, on September 8, 1972, the executors filed

application in the Probate Court to take charge of the real estate and on September 19, they petitioned the Probate Court for an order to sell the real estate in order to pay claims, expenses and taxes and also pursuant to the express power contained in the will. The inventory, filed concurrently with the petition for sale, disclosed real estate with valuation aggregating $154,000 and personal property of value totalling $16,382.25. On October 10, the Probate Court did order sale of the realty as prayed, at private sale, under the terms of the will.

After an appeal duly taken from that order of the Probate Court, both proceedings then before the Circuit Court were consolidated by agreement of the parties. The stipulation for consolidation recites that all parties had in mind "that the judgment of the Court will result in the dismissal of either Case No. 5197E or Case No. 5185E and that the Court will order all further proceeding to progress in the surviving cause * * *." All parties also entered into a stipulation [of statement] of facts in which the parties prayed the court to determine "all issues relating to the priority with regard to the procedure for sale of real estate of either the petition for partition or the Probate Court's Order to Sell."

Pursuant to that submission, the trial court entered judgment finding that the partition sought by the Scotts "was contrary to the Last Will and Testament of Floyd A. Kiser wherein he empowered the executors to sell such real estate." Accordingly, the court entered judgment against the Scotts, and the proceedings in Case No. 5197E were remanded to the Probate Court for sale of the real estate. On their appeal from that judgment, the Scotts make the following points: 1) that the trial court erred in denying partition, because Mary

Scott had a legal right to partition based upon her joint tenancy in the realty which vested at the time of the testator's death; and 2) that the trial court erred in finding that partition would be contrary to the testator's intention.[1]

■ No question exists but that Mary Scott acquired legal title as tenant in common immediately upon the testator's death. Nor do respondents dispute the proposition that tenants in common generally have a right to partition under § 528.030 (this and all other statutory reference being to RSMo 1969), and Rule 96.01. On the other hand, the Scotts do not deny that their right to partition is not absolute. An unquestionable limitation imposed upon that right appears in § 528.130, which provides:

"No partition or sale of lands, tenements or hereditaments, devised by any last will, shall be made under the provisions of this chapter, contrary to the intention of the testator, expressed in any such will."

That statutory declaration merely implements the cardinal rule governing the treatment of every decedent's estate, by which the courts must bend every effort to give effect to the testator's true meaning and intention. In this regard, see also § 474.430. Thus, the issue in this case boils down to this single question: would the partition sought by the Scotts violate the testator's intention?

■ With respect to this determinative issue, no case has been cited or found directly in point. Nevertheless, the ascertainment of the testator's intention for present purposes can be fairly deduced from the provisions of the will. First to be considered is the fact that the testator selected these two particular appointees to serve as

---

1. The Scotts also attempt to argue that the Probate Court had no jurisdiction to order a sale because of the prior pendency of the partition action. This issue is not before this Court, because not properly set out as a separate Point Relied On. Rule 84.04(d). Moreover, a ruling on that point would have no practical value and would simply mean at most that the Executors would have to refile their petition in the Probate Court. The futility of devoting attention to this question seems to have been recognized by the parties by the language of the stipulations filed by them in the Circuit Court.

the executors of his will. That alone is an important expression of confidence. The extent of that confidence was further evidenced by the provision that these executors were authorized to serve without bond.

Far more significantly, however, the testator then proceeded to invest these appointees with extremely broad power under which they could encumber or dispose of any part of the estate without any court order and upon whatever terms and conditions and for whatever consideration they should deem proper "within their sole discretion." This type of power calls for the exercise of a careful and prudent judgment. *Earney v. Clay*, 516 S.W.2d 59 (Mo.App. 1974). The vesting of judgment in this matter in such broad discretionary terms necessarily reflects a weighty consideration in the testator's mind.

Surely the testator could not have intended and would have resisted the idea that some stranger could be interjected into the handling of by far the major part of his estate without giving the executors in whom he had evidenced such great confidence any opportunity to administer those assets. That interjection is precisely what would occur if the Scotts' partition suit were permitted presently to go forward. They filed their suit on the very day that the executors received letters testamentary. Obviously the executors had not yet had time to enter upon their duties, prepare an inventory and chart an intelligent course of action. To reward the Scotts for winning a race to the courthouse would be to allow them to veto the testator's own choice of the persons to administer his estate. It would open the door to putting someone other than the testator's selection into a position to say when, how and to whom the real estate is to be sold.

Another factor of considerable significance should be noted. The powers to the executors under the will are sufficiently broad to permit disposition by private negotiated sale, as indeed is permitted under the order of the Probate Court dated October 10, 1972. If the Scotts' partition suit were to go forward at this time, the partition sale could only be under the hammer at public auction. Section 528.340 and Rule 96.34. Thus, a sale pursuant to partition could likely mean a sacrifice in value to the estate and all of the heirs. The avoidance of this result could very well have been a major intention on the part of the testator in granting the broad power of sale which he did give to his executors.

■ The Scotts argue in various ways and in slightly different terms in different parts of their brief a basic theme that the power of sale given to the executors here was merely discretionary without being an imperative direction to sell. It is quite true that if there had been an imperative direction to sell, then that provision of the will would have amounted to an equitable conversion of the realty into personalty and would have barred partition. *Rawlings v. Rawlings*, 332 Mo. 503, 58 S.W.2d 735 (1933). By like token, in the absence of an imperative direction, there would not be an equitable conversion. *McQueen v. Lilly*, 131 Mo. 9, 31 S.W. 1043, 1045 (1895); *Uphaus v. Uphaus*, 315 S.W.2d 801, 807 (Mo.1958); 68 C.J.S. Partition § 43c, p. 63.

■ However, that is not to say that an equitable conversion must be shown in order that a partition be inconsistent with the testator's intention. An equitable conversion does make partition improper, but there are other circumstances not amounting to a technical equitable conversion which can also bar partition on the ground that it would subvert the testamentary plan.

The case of *Brockman v. St. Louis Union Trust Co.*, 44 S.W.2d 877 (Mo.App.1932) illustrates a power of sale under circumstances which adequately showed that partition would be contrary to the testator's intention even though there was no direction to sell sufficient to constitute a technical equitable conversion. In that case the will created a trust in favor of 5 children, with distribution to be made upon the

death of each child to his or her descendants. Upon the death of one of the testator's children, her children applied for a partition and sale. There was no question that each of the petitioning grandchildren had legal title to an undivided 1/15th interest. In this respect, the opinion states: "Fortunately the parties are in unison upon all questions of title . . . and that the plaintiffs herein, upon the death of their mother, became and are now each possessed of an undivided one-fifteenth interest therein." Nevertheless, it was held that partition would be improper in view of the fiduciary power under the will "whenever the trustee may deem best, from time to time to dispose of any portion of the trust estate by sale, mortgage, or lease, either for the purpose of reinvestment or distribution, and from time to time to invest and reinvest the trust property, and to change the character of the investment as the trustee may deem best."

The *Brockman* opinion also answers Scotts' argument that the judgment of the trial court will deprive them of one of the principal privileges of ownership, that being the right of sale. The same argument was advanced and rejected in *Brockman*. That opinion holds at l.c. 880:

"Of course, the discretion lodged in the trustee was not an unlimited and unbridled one, but was to be soundly and fairly exercised. We have no doubt from the context of so much of the will as is before us that it was the intention of the testatrix that distribution to such beneficiaries as are the plaintiffs herein should not be delayed unreasonably beyond the time of the vesting of title to an undivided portion of the estate in them. Any other construction of the will would enable the trustee, if it chose, to defeat the plainly expressed purpose of the testatrix. But the trouble is that the petition failed to count upon that theory of the case, or to state any facts so as to enable the court to determine for how long distribution had been delayed, or that the trustee had declined to make distribution, or that it was acting fraudulently and unfairly and in abuse of the trust reposing in it."

So also here, the Scotts are not being deprived of the privilege of having their property sold. No undue delay has occurred in the executors' exercise of their power of sale. To the contrary, this record shows that the executors have moved with the utmost dispatch toward the accomplishment of a sale and have been prevented from effecting a sale only because of the legal opposition by the Scotts themselves. In this case, there is no problem about whether or not there will be a sale. Rather, the only questions are who shall conduct the sale and the manner of sale. A sale by the executors will effectuate the testator's intention, whereas the interjection of a commissioner appointed in a partition suit who might be a stranger unknown to the testator and who would have to sell at public auction would be subversive to that intention. The trial court's finding was not palpably erroneous and must be affirmed. Rule 73.01; *R.L.S. v. J.E.S.*, 522 S.W.2d 5, 6 (Mo.App.1975).

All concur.