572 S.W.2d 200 (1978)
In re the ESTATE of Sam KING, Deceased.
Paul M. KING, Administrator, Respondent-Appellant,
v.
Shirley and David SMITH, Appellants-Respondents.
Nos. KCD 29305, 29315.
Missouri Court of Appeals, Kansas City District.
October 2, 1978.
*202 Christian F. Stipp, David Thomas, Stipp & Thomas, Carrollton, for appellants-respondents.
John Franken, Robert A. Bryant, Carrollton, for respondent-appellant.
Before SHANGLER, P. J., and WASSERSTROM, J., and MASON, Special Judge.
DONALD L. MASON, Special Judge.
From a judgment of the Circuit Court of Carroll County decreeing that Shirley Smith and David Smith were the surviving joint tenants of two certificates of deposit the Administrator of the Estate of Sam King, Deceased, appeals. Shirley Smith appeals from that portion of the judgment decreeing that she was entitled to only one-half of the balance due on a contract for the sale of real estate.
Under Murphy v. Carron, 536 S.W.2d 30 (Mo.banc 1976), our standard of review is to sustain the decree unless (1) there is no substantial evidence to support it; (2) it is against the weight of the evidence; (3) it erroneously declares the law; or (4) it erroneously applies the law, MFA Mutual Insurance Company v. Thost, 561 S.W.2d 431 (Mo.App.1978).
*203 On November 5, 1975, Letters of Administration were issued to Paul M. King by the Probate Court of Carroll County in the Estate of Sam King, Deceased. On January 21, 1976, Paul King filed his Affidavit to Discover Assets and propounded Interrogatories to Shirley Smith. In the Affidavit the Administrator claimed that Shirley Smith was withholding assets derived from a contract for the sale of real estate dated July 29, 1975, one-half of which properly belonged to the Estate inasmuch as Sam King had been one of the sellers of the real estate, Shirley Smith being the other.
In answering the Interrogatories Shirley Smith asserted that prior to the execution of the contract for sale, she and Sam King owned the real estate as joint tenants with the right of survivorship and not as tenants in common; and, therefore, she was entitled to the total proceeds of the sale. She further divulged that she had in her possession and under her control a Certificate of Deposit at the First National Bank of Carrollton in the principal amount of $10,000, payable to Sam King, Agnes King, Shirley Smith or David Smith; and a Certificate of Deposit at the First National Bank of Carrollton in the principal amount of $40,000, payable to Sam King, Agnes King or David Smith. This disclosure precipitated the Administrator filing his Supplemental Affidavit to Discover Assets, citing in David Smith, and to also submit Interrogatories to David Smith. Supplemental Interrogatories were also submitted to Shirley Smith. In answering Interrogatories both Shirley and David averred that they were entitled to the Certificates of Deposit, being the surviving joint tenants of Sam King, Deceased. A hearing was held in the Probate Court on April 5, 1976, and the cause was taken under advisement. On April 21, 1976, the Probate Court ruled, inter alia, that Shirley and David Smith were entitled to the Certificates of Deposit as surviving joint tenants and that Shirley Smith was entitled to the entire proceeds of the contract for the sale of the real estate. The Administrator appealed to the Circuit Court of Carroll County on April 30, 1976.
On November 23, 1976, trial was had before the Circuit Judge (now retired) without a jury. On December 20, 1976, judgment was entered decreeing (I) that Shirley and David Smith were surviving joint tenants of Sam King and entitled to the Certificates of Deposit; and (II) the Estate and Shirley Smith were each entitled to one-half of the proceeds from the contract for the sale of real estate. Each party duly perfected their appeal. We will focus on the evidence adduced as we discuss each topic.

I

CERTIFICATES OF DEPOSIT
For reversal the Administrator urges that the (1) Certificates of deposit did not comply with Section 362.470;[1] (2) the Certificates having been purchased solely from the funds of Sam King and his deceased wife belonged to his Estate; (3) the admission of testimony of F. G. Rea was violative of Section 491.010, the "dead man's statute"; and (4) the "best evidence rule" should have excluded the admission of certain defendant's exhibits. We will identify the alleged erroneous evidence and exhibits as we discuss these points.
On November 10, 1975, the First National Bank of Carrollton, Missouri, by its President, F. G. Rea, issued its nonnegotiable[2] Certificate of Deposit No. 7995 in the face amount of $40,000. This Certificate recited that "Sam King, Agnes King or David Smith" had deposited that amount with the bank, payable 12 months hence with interest at the rate of six percent per annum. Also, on the same date the bank issued its Certificate of Deposit No. 7996. That Certificate recited that "Agnes King, Sam King, Shirley Smith or David Smith" had deposited $10,000 under the same terms. Each Certificate recited that the interest *204 was to be deposited "to checking account." Each Certificate bore the social security account No. XXX-XX-XXXX. Neither the owner of the checking account to which the interest was to be deposited nor the owner of the social security number was identified on the documents.
The Certificate of Deposit form used by the bank was in triplicate with carbon paper inserted between the first and second and second and third forms by the manufacturer. As can be gleaned from an examination of the exhibits, and as testified to by the Administrator's witness, a vice-president of the bank, the inserted carbon paper permits the completion of the original and two duplicates contemporaneously, whether it be in longhand or typing. On completion of the Certificate the original was given to the depositor and the two duplicates were kept by the bank as its records of the transaction. The quoted language which we have set forth above appears on the face of the original and the duplicates. On the reverse side of what appears to be the first duplicate of No. 7996, is printed a graph to record interest accrued. On the reverse side of what appears to be the second duplicate is a graph to record payment of accrued interest. Under the legend for disposition of interest, an "X" appears in the box adjacent to "deposit to checking account." The names of the depositors are the same as on the face of the Certificate and, likewise, are written in longhand. Under the printed word "authority" appears the signature of Agnes King. Under the signature of Agnes King appears the printing "payable to either/or survivor." In the box adjacent to that printed language an "X" in ink has been placed. The reverse side of the two duplicates of Certificate No. 7995 are the same with one addition. On the reverse side of the second duplicate following the longhand names of the depositors appears "either/or surv." The Administrator, as plaintiff, introduced the original of each Certificate and objected strenuously to the admission of the two duplicate copies of each Certificate by the defendants. The court received the duplicates on the grounds that the face of the Certificate created an ambiguity as to the intent of the parties in the creation of the joint tenancy account. The Administrator now urges that the admission of these duplicates violates the common law "best evidence rule."
The transcript reveals that during the cross-examination of plaintiff's witness concerning the duplicates of each Certificate, the Administrator made various objections to the testimony leading to the admission of the duplicates, none of which objections encompassed the reason now advanced. The purpose of objections is to avoid trial error and to enable the court to rule intelligently. To that end the burden is on the party who objects to the admission of evidence to state the proper ground for exclusion, Lewis v. Hubert, 532 S.W.2d 860 (Mo.App.1976). Objections should be specific so that the trial court can realize what rule of evidence is being invoked and why that rule of evidence would exclude the evidence, Lindsey v. P. J. Hamill Transfer Company, 404 S.W.2d 397 (Mo.App.1966). Where the proper objection is not made the trial court cannot be convicted of error in overruling the objection, Crabtree v. Reed, 494 S.W.2d 42 (Mo.1973); and nothing is preserved for appellate review, Federal Deposit Insurance Corporation v. Crismon, 513 S.W.2d 305 (Mo.1974); Plumlee v. Ramsay Dry Goods Company, 451 S.W.2d 603 (Mo. App.1970).
In a court-tried case this Court does not consider errors as such in the admission or exclusion of evidence; but we arrive at our conclusions by considering only the evidence which is properly admissible, Ruckman and Hansen v. State Highway Commission, 546 S.W.2d 500 (Mo.App. 1976); Hunt v. Easley, 495 S.W.2d 703 (Mo. App.1973); Triplett v. Wyatt, 360 S.W.2d 386 (Mo.App.1962). There is a reason why the duplicate of each Certificate was admissible which lays waste to the Administrator's "best evidence rule" assertion. The original and two duplicates of each Certificate were completed contemporaneously by the use of carbon paper. The second and third sheets are not considered as copies, *205 but as duplicates. "A carbon copy of a document is a duplicate or an original document repeated, and where signed by the parties or otherwise properly identified, is admissible over an objection that it is not the best evidence," Land Clearance for Redevelopment Authority v. Zitko, 386 S.W.2d 69 (Mo.banc 1964). In Schroer v. Schroer, 248 S.W.2d 617 (Mo.1952), the admissibility of a duplicate deposit slip was at issue; and it is stated, l.c. 622, "a duplicate is, in legal conception, `an original instrument repeated, a document the same as another in essential particulars, differing from a copy and being valid as an original.'" See also Central Missouri Foods, Inc. v. General Grocer Co., 538 S.W.2d 63 (Mo.App.1976), involving a xerox copy of a letter; and Adler v. Ewing, 347 S.W.2d 396 (Mo.App.1961), pertaining to a carbon copy of a work order. In the factual situation of this case, when the testimony attested to the contemporaneous completion of both sides of the documents, the carbon copies were properly admitted as duplicates.
Perpetuating the same argument as to the nonadmissibility of the duplicates, the Administrator urges that the original of each Certificate, considered alone, did not conform to the requirements of Section 362.470, RSMo., so as to create a joint tenancy in Shirley and David Smith as survivors of Agnes King who died on the 8th day of March, 1975, and Sam King who died on the 9th day of October, 1975. This argument continues to ignore that the duplicates were properly admitted into evidence, and, with the original, constitute the total documentation of the transactions, In Re Estate of LaGarce, 487 S.W.2d 493 (Mo.banc 1972). We can perceive no difference in creating bank records by the mechanics used in this case than the printed "signature card" commonly found in the cases in which the application of Section 362.470 is in issue.
That section pertains to the creation of joint tenancy accounts with banks and trust companies, and in its pertinent part provides:
"When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, and in form to be paid to any one or more of them, or the survivor or survivors of them, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any of them, or to the survivor or survivors of them; . . . If more than two persons are named as such depositors and one of them dies, the deposit becomes the property of the survivors as joint tenants."
We also note Section 369.150 is almost an identical statute pertaining to joint tenancy accounts with savings and loan associations. In all material respects both sections are the same, In Re Estate of LaGarce, supra, and the law pertaining thereto is applicable to both, Matter of Estate of Parker, 536 S.W.2d 25 (Mo.banc 1976).
In LaGarce the confusion established in the earlier cases (many of which were overruled by LaGarce) construing these sections of our statutes was eliminated; and it was unequivocably established "that if the statute is complied with, in the absence of fraud, undue influence, mental incapacity, or mistake, the survivor will become the owner of the account," supra, at p. 501. The parties have not cited, nor has our own independent research revealed, a case wherein the creation of the certificates of deposit was accomplished in a factually analogous fashion. Section 362.470 does not dictate the mechanics to be followed, or the precise language to be used, to create a joint tenancy account. It merely requires that the account be "in form to be paid to any one or more of them, or the survivor or survivors of them" in order to be a joint tenancy account. In this case the nonnegotiable original of the certificates as given to the depositors did not contain the language that the depositors were joint tenants with the right of survivorship, but the contemporaneously executed duplicates, which must *206 also be considered, contained that language. In our view this sufficiently complied with the statute to make Shirley and David Smith, as the survivors, the owners of the certificates, LaGarce, supra. The bank was apparently of the same mind and thought it was sufficiently acquitted in accordance with Section 362.470 as those certificates were paid to Shirley and David Smith on October 10, 1975, the day following the death of Sam, Dalton v. American National Bank, 309 S.W.2d 571 (Mo.1958). Moreover, an additional basis exists for affirmance of this portion of the judgment entered by the court below.
The trial court found in favor of Shirley and David Smith on the grounds that the evidence disclosed the intent of the depositors to establish a joint tenancy account. The evidence which supports this finding is the documentary evidence to which we have already alluded and the testimony of F. A. Jones, called as a witness by the Administrator, and Frank G. Rea, called as a witness by the Smiths. The witnesses were, respectively, Vice President and President of the bank.
In essence, Mr. Jones, who did not attend the transaction testified to the contemporaneous creation of the original and two duplicates of each Certificate, that the Certificate forms as filled in created a joint tenancy account with the right of survivorship, that Agnes King signed the reverse side of each duplicate and that the interest paid on the Certificates was deposited in a checking account maintained at the bank in the names of Agnes King, Sam King and David Smith, as joint tenants with the right of survivorship. He further testified that Shirley Smith was the natural daughter of Agnes King, and had for many years, before and after David's birth, made her home with her mother and her stepfather, Sam King.
Mr. Rea testified to the fondness Sam King expressed for Shirley Smith and the familial relationship that existed between them. He also testified that on January 10, 1975, Sam and Agnes King appeared at the bank and he personally handled the creation of the involved Certificates of Deposit. The Certificates, in triplicate, were completed by him at the direction of Sam and Agnes King, with the duplicate copies of each Certificate being signed by Agnes King. The Certificate was completed so as to comply with the stated wishes of both Sam and Agnes that the Certificates would go to Shirley and David upon their deaths.
In Melton v. Ensley, 421 S.W.2d 44, l.c. 52 (Mo.App.1967), it is stated (modified so as to conform to the holding in LaGarce), "[w]here the deposit is neither made within the words or purview of the joint deposit statutes nor accompanied by a joint tenancy deposit agreement, no . . . joint tenancy with the attendant right of survivorship [is created] and the burden is cast upon the survivor to show by a preponderance of the evidence the deposit was made with the intention of creating a joint tenancy. It is the intention of the depositor which controls,. . . and not the mere form in which the deposit is made." In that case the depositor, Melton, purchased a certificate of deposit and established savings accounts in the names of "L. Elmo Melton or Oba T. Ensley." In creating these accounts Mr. Melton told the institutions he wanted Ms. Ensley to be the joint tenant with the right of survivorship. Other evidence supported this expressed intent. The court held that the accounts did not comply with the joint tenancy statutes, but the intent of the depositor was sufficiently established to reverse the trial court and award the funds to the defendant as surviving joint tenant.
In this case both the documentary evidence and the testimony of the two witnesses clearly, and without equivocation, leads to the conclusion that Sam and Agnes King desired Shirley and David Smith be joint tenants with the right of survivorship, Princeton State Bank v. Wayman, 271 S.W.2d 600 (Mo.App.1954). There being no evidence of fraud, undue influence, mental incapacity or mistake, Shirley and David Smith, as the survivors, became the owners of the Certificates, In Re Estate of LaGarce, supra, and the court below was correct *207 in so ruling. The cases of Ison v. Ison, 410 S.W.2d 65 (Mo.1967), Smith v. Thomas, 520 S.W.2d 132 (Mo.App.1975), and Matter of Estate of Bonacker, 532 S.W.2d 898 (Mo. App.1976), relied upon by the Administrator are factually inapposite. In those cases the alleged joint tenant did not introduce evidence to prove the depositor's intention to create a joint tenancy account.
The Administrator's contention that the Certificates must be awarded to the Estate on grounds they were purchased from funds belonging solely to Sam and Agnes King can be ruled adversely as not being the law or the evidence. Except during the lifetime of the various depositors, it matters not whose funds were used to purchase the Certificates, Carroll v. Hahn, 498 S.W.2d 602 (Mo.App.1973); and upon the death of the depositor, the survivor becomes the owner, LaGarce, supra. The testimony of Frank Rea and an exhibit establishes that the funds used to purchase these two Certificates was obtained from cashing a Certificate of Deposit in the sum of $71,000, payable to "Sam King, Agnes King or David Smith, either/or survivor."
The Administrator further asseverates that the testimony of Frank G. Rea concerning the intent of Sam and Agnes King to make a joint tenancy deposit should not have been received as their deaths disqualified him from testifying because of Section 491.010,[3] commonly referred to as the dead man's statute. The respondents counter that the Administrator did not make a timely or proper objection to that testimony and, therefore, the disqualification was waived, and the court did not err in the receipt of this testimony.
The cases universally divide the statute into "transactions" and "administration" provisions, Flanagan v. DeLapp, 533 S.W.2d 592 (Mo.banc 1976). Under the "transactions" provision, a contracting party or party to a cause of action is not deemed incompetent for all purposes, but only as to those matters which the dead party could deny; while under the administration provision, when the administrator or executor is a party to the action, the surviving contracting party is disqualified as to all acts and contractual matters occurring before the commencement of probate, Birdsong v. Estate of Ladwig, 314 S.W.2d 471 (Mo.App.1958); Fellows v. Farmer, supra. It is obvious from reading the Administrator's Point Relied On that he ascribes claimed error to the "transactions" provision of the statute. Since the witness is not incompetent under the dead man's statute for all purposes, objections to his testimony must be timely and sufficiently exact to inform the court of the reason why the witness is disqualified in a particular instance, Birdsong v. Estate of Ladwig, supra; Fellows v. Farmer, supra; State ex rel. Community Heating and Air Conditioning Co., Inc. v. Schwartz, 452 S.W.2d 243 (Mo.App.1970); Upshaw v. Latham, 486 S.W.2d 656 (Mo.App.1972); Elsea v. Smith, supra.
Mr. Rea, president of the bank, was called as a witness by the Smiths. Mr. Rea's testimony consumed 12 transcript pages and he answered 60 questions before the Administrator voiced an objection which included reference to Section 491.010. That Objection, "It is in violation of the dead man's statute," was to the question, "What did you tell him?" Prior to that question, he had made objections stating various reasons, none of which included the alleged disqualification of the witness under Section 491.010. Prior to this objection, the witness had testified, inter alia, to his name and occupation, his longtime business relationship with Sam and Agnes King, and the relationship between the four depositors. He had further testified as to the *208 contemporaneous completion of each Certificate with the two duplicates, that he checked the box indicating a joint tenancy with the right of survivorship because he was told to do so by Sam and Agnes, and that Agnes signed the duplicate of each Certificate. Further testimony received prior to the described objection included inquiry by, and advice to, Sam as to the deposited funds going to the named survivors upon his death.
In Upshaw v. Latham, supra, it was ruled that the competency of the witness was waived when an objection was voiced after the witness answered 19 questions. While we do not reach the same result on a mathematical basis, there can be no question that the competency of Mr. Rea was waived by the Administrator. The objection voiced was not timely made, was only a general objection and did not apprise the court the grounds for the witness's disqualification, Birdsong v. Estate of Ladwig, supra; State ex rel. Community Heating and Air Conditioning Co., Inc. v. Schwartz, supra. The trial court did not commit error in the receipt of Mr. Rea's testimony.
In addition to the four points relied on which we have identified above the Administrator, in Point III, asserts, "(T)he trial court erred in admitting extrinsic evidence concerning the two Certificates of Deposit numbered 7995 and 7996 because the common law `Parol Evidence Rule' prohibits such evidence in that no parol evidence is admissible where the instrument is a complete integration of the parties' agreement and is unambiguous." This point violates the requirements of Rule 84.04(d), being merely an abstract statement, and preserves nothing for appellate review, Simpson v. Island View Sales Corp., 540 S.W.2d 624 (Mo.App.1976); Barber v. M.F.A. Milling Co., 536 S.W.2d 208 (Mo.App.1976); McCarty v. Donahue, 545 S.W.2d 359 (Mo. App.1976). That rule requires that the appellant "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous . . . . Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this rule." These requirements are mandatory and applicable to court tried cases, Long v. Lincoln, 528 S.W.2d 512 (Mo. App.1975). The Administrator does not identify the admitted extrinsic evidence or state wherein and why the court erred in admitting this unidentified extrinsic evidence, but leaves it to conjecture and for us to ponder and guess, Matter of Estate of Langford, 529 S.W.2d 31 (Mo.App.1975); Barber v. M.F.A. Milling Co., supra. We are not obligated to sieve the argument portion of the brief or the transcript on appeal in an effort to ascertain the meaning of this point relied on, Dors v. Wulff, 522 S.W.2d 325 (Mo.App.1975). Even if we were to speculate that the Administrator is referring to the admission into evidence of the duplicates of the Certificates, and that would be sheer speculation, we have already discussed that point.

II

REAL ESTATE TRANSACTION
Relying on the 1956 Iowa Supreme Court case of In Re Estate of Baker, 247 Iowa 1380, 78 N.W.2d 863, 64 A.L.R.2d 902, the trial court adjudged that the Administrator and Shirley Smith were each entitled to one-half the proceeds from the sale, in the form of a contract for deed, of joint tenancy real estate.
On May 2, 1975, "Sam King and Shirley Smith, his daughter, as joint tenants with right of survivorship and not as tenants in common" were granted fee simple title to certain described real estate by Ola C. Heideman. On July 29, 1975, Sam and Shirley contracted to deed that real estate to Marvin E. and Janet E. Wheeler, husband and wife, upon the full performance of the terms and conditions of the contract. The pertinent provisions of the contract were the sale price of $29,000 payable $3,000 at the signing of the contract, and the balance payable at the monthly rate of $218 which was first to be applied to the payment of accrued interest, computed at *209 the agreed rate of 9% per annum, and the balance to principal. In addition, the buyers were to pay all taxes and insurance premiums necessary to keep the premises insured in an amount at least equal to the principal balance due. In accordance with the terms of the contract Sam and Shirley deposited with the First National Bank of Carrollton, as escrow agent, their warranty deed and the abstract of title, and the Wheelers deposited their quit-claim deed. The Wheelers were granted immediate possession of the realty. The contracting parties further agreed that in the event the buyers failed to pay the taxes or insurance premiums or make the monthly payments within 60 days after the same were due, the contract would terminate, the monies paid would be considered rent, the buyers would relinquish possession, and the mentioned documents held by the escrow agent would be delivered to the sellers. Upon the payment of the balance due, and the contract permitted acceleration, the documents held by the escrow agent were to be delivered to the buyers and the contract was to be terminated as having been performed. The contract provided it was "binding on the parties, their assigns, successors, heirs and legal representatives." In the contract, warranty deed and quit-claim deed the sellers were referred to as "Sam King, single, and Shirley Smith, single." At trial time the parties agreed the contract was still executory and the buyers were in full performance with the principal balance of $25,959.95 due.[4] There is no contention that Sam King and Shirley Smith did not own the real estate as joint tenants with the right of survivorship and not as tenants in common at the time of entry into the agreement with the Wheelers, Sections 442.450 and 442.460.
By its ruling the trial court decreed that the act of Sam and Shirley in contracting to deed the real estate to the Wheelers effectuated a conversion of the sale proceeds into tenancy in common property. This was the result reached in the Baker case, supra, upon which the trial court relied. In that case Allie Baker and his wife, Clara, owned two separate tracts of real property as joint tenants which they contracted to sell by installment contracts. After the death of Allie, Clara instituted a declaratory judgment action against the administrator of her husband's estate to determine the ownership of the proceeds of the installment sale contracts. In a 5-4 opinion the Iowa Supreme Court held, "a severance of a joint tenancy results where a contract for the sale of real estate is entered into by the joint tenants . . . . The contract for sale resulted in an equitable conversion of the real estate into personalty." The Court further held the vendor (plaintiff) did not show by competent evidence "it was the intention of the vendors in the real estate contract the proceeds received therefrom were to be held in joint tenancy with right of survivorship."
The doctrine of equitable conversion is recognized in Missouri, but it is almost always applied in matters pertaining to probate estates. See Volume 7A, Missouri Digest, Conversion. The usual application of this doctrine is when the testator orders his executor to sell real estate and distribute its proceeds to named legatees without any grant of discretion to the executor. A fictional or constructive alteration of the land is created whereby it is to be considered personalty and dealt with as such, Turner v. Hine, 297 Mo. 153, 248 S.W. 933 (1923); Ganahl v. Ganahl, 323 Mo. 620, 19 S.W.2d 898 (1929). The doctrine of equitable conversion is founded on the maxim that equity regards that as done which ought to be done and is a legal fiction which converts real property into personal property, or vice versa, so as to give effect to directions in a will or contract, although no change has actually taken place, O'Bannon's Estate v. O'Bannon, 142 Mo.App. 268, 126 S.W. 215 (1910); Turner v. Hine, supra; 18 C.J.S. Conversion §§ 1 and 2, page 45. We have not found any Missouri case wherein *210 the doctrine of equitable conversion has been applied as it was in the Baker case from Iowa.
Two years before the Supreme Court of Iowa published its sharply-divided opinion the Nebraska Supreme Court reached the same result in Buford v. Dahlke, 158 Neb. 39, 62 N.W.2d 252 (1954).[5] Nevada and Idaho in the cases of McKissick v. McKissick, 560 P.2d 1366 (Nev.1977), and In Re Estate of Cooke, 96 Idaho 48, 524 P.2d 176 (1973), have also adopted comparable holdings.
The states of Illinois, Massachusetts, Wisconsin, Arizona, Montana, Indiana, New York and Kansas have refused to apply the doctrine of equitable conversion in the cases of Watson v. Watson, 5 Ill.2d 526, 126 N.E.2d 220 (1955); Childs v. Childs, 293 Mass. 67, 199 N.E. 383 (1936); Simon v. Chartier, 250 Wis. 642, 27 N.W.2d 752 (1947); Kurowski v. Retail Hardware Mutual Fire Insurance Company, 203 Wis. 644, 234 N.W. 900 (1931); Smith v. Tang, 100 Ariz. 196, 412 P.2d 697 (1966); Estate of Rickner, 164 Mont. 51, 518 P.2d 1160 (1974); Hughes v. Hughes, 356 N.E.2d 225 (Ind. App.1976); Re DeWitts Will, 202 Misc. 167, 114 N.Y.S.2d 81 (1952); Hewitt v. Biege, 183 Kan. 352, 327 P.2d 872 (1958), by decreeing that the proceeds from the sale of tenancy property retains those tenancy characteristics, in the absence of the vendor's intention to the contrary.
There is considerable Missouri authority that proceeds from the sale of property held by the entirety, absent other factors, retains its entirety characteristics after sale and even after reinvestment.
In Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55 (1940), plaintiff and her deceased husband owned several tracts of real estate as tenants by the entirety which they sold and accepted part payment in the form of notes and deeds of trust with Mr. Schwind as the sole payee and beneficiary. In ruling adversely to the administrator, who claimed the note and proceeds as the personal property of the deceased husband, the court ruled, "the estate by the entirety did not cease to exist upon the sale of the real estate but merely was transferred from the real estate to the proceeds derived therefrom." 142 S.W.2d at 59.
In the case of In Re Baker's Estate, 359 S.W.2d 238 (Mo.App.1962), a discovery of assets proceedings against the administratrix, a note representing the proceeds of the sale of entirety property was in issue. The court held, "in the absence of evidence indicating a contrary intention of both parties a tenancy will be presumed to follow the proceeds of the sale of entirety property." At page 244.
Feltz v. Pavlik, 257 S.W.2d 214 (Mo.App. 1953), involved, in part, money realized from the sale of real estate held in tenancy by the entirety. The sale proceeds were deposited in a joint tenancy account and thereafter withdrawn by the husband, who was in ill health, and paid over to a third party. In ruling the proceeds were the property of the surviving wife the court reiterated the principle that, absent an intent of the parties to the contrary, the proceeds from the sale of entirety property retain the characteristics of tenancy by the entirety ownership.
Other cases which adhere to the principle that the proceeds from the sale of tenancy by the entirety real estate retain their entirety characteristics are Hamrick v. Lasky, 107 S.W.2d 201 (Mo.App.1937) (Surplus proceeds from foreclosure sale); McElroy v. Lynch, 232 S.W.2d 507 (Mo.1950); Frost v. Frost, 200 Mo. 474, 98 S.W. 527 (1906); and Johnson v. Johnson, 268 S.W.2d 439 (Mo. App.1954).
It being clearly the law in this state that estates by the entirety may exist also in personal property, Coffey v. Coffey, 485 S.W.2d 167 (Mo.App.1972); In Re Estate of O'Neal, 409 S.W.2d 85 (Mo.1966), the aforesaid principle has been applied to personal property and money in the cases of Ray v. Ray, 336 S.W.2d 731 (Mo.App.1960); In Re Estate of Jeffries, 427 S.W.2d 439 *211 (Mo.1968); and Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28 (1930).
There are substantial similarities between joint tenancies and tenancies by the entirety, the latter being essentially the former, modified by the common law theory that husband and wife are one person, United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939); Coffey v. Coffey, supra. The essential elements of each tenancy are (1) the tenants must have one and the same interest (unity of interest); (2) the interest must accrue by one and the same conveyance (unity of title); (3) the interest must commence at one and the same time (unity of time); and (4) the property must be held by one and the same undivided possession (unity of possession), Feltz v. Pavlik, supra; Schwind v. O'Halloran, supra. There are also distinctive characteristics between the two estates. Joint tenancy is based on the theory that together the joint tenants have but one estate; not a number of estates equal to the number of joint tenants; they hold per my et per toutby the moiety or half and by the whole; that is, each joint tenant is seized of the whole estate, he has undivided share of the whole estate rather than the whole undivided share, Longacre v. Knowles, 333 S.W.2d 67 (Mo.1960); Estate of Osterloh v. Carpenter, 337 S.W.2d 942 (Mo.1960); In Re Gerling's Estate, 303 S.W.2d 915 (Mo.1957). The most distinctive characteristic of a joint tenancy estate is that of survivorship, In Re Gerling's Estate, supra. While each of the joint tenants has a right to possession of the premises, no one tenant has the right of exclusive possession. Whether a joint tenant will ever attain sole ownership and exclusive possession is contingent on him being the survivor. The deed creating the joint tenancy does not determine this, Estate of Osterloh v. Carpenter, supra. A joint tenancy can be destroyed by conveyance or partition by one or more of the several joint tenants during the lifetime of the cotenants, Estate of Osterloh v. Carpenter, supra. Tenancy by the entirety can only be created between husband and wife and each spouse is seized of the whole or entirety and not a share, moiety or divisible part. Neither spouse can destroy the tenancy by his or her individual act so as to defeat the right of the other to take the entire estate as the survivor, Stewart v. Shelton, 356 Mo. 258, 201 S.W.2d 395 (1947); Frost v. Frost, supra. The surviving spouse continues to hold the whole title because there is no one to share itnot because of the survivorship, which effects a change in the person only and not the estate, Schwind v. O'Halloran, supra.
The cases to which we have alluded dealing with the proceeds from the sale of tenancy by the entirety estates, whether real or personal, are predicated upon the proposition that there were no acts or conduct indicating an intention of the tenants to destroy their entirety estate. In addressing the issue presented to the trial court we do not perceive a conceptual distinction between an estate held by the entirety or as joint tenants so as to mandate a different result as to the proceeds from the sale. Sam and Shirley were granted title to the real estate as joint tenants with the right of survivorship and not as tenants in common. They jointly executed the documents comprising the installment sale to the vendees.
As recognized in the Baker case emanating from the Supreme Court of Iowa, the application of the equitable conversion doctrine is predicated on carrying out the intention of the vendor, Scott v. Dougan, 527 S.W.2d 680 (Mo.App.1975); Ganahl v. Ganahl, 323 Mo. 620, 19 S.W.2d 898 (1929). The Administrator adduced no evidence to indicate it was the intention of Sam and Shirley, the vendors, to destroy their joint tenancy estate and receive the proceeds as tenants in common. The scant evidence presented to the trial judge was that the sale proceeds received by the vendors, during the lifetime of Sam King, was deposited in a savings account to which Sam and Shirley were joint tenants. The evidence which we have heretofore elucidated concerning the close familial relationship existing between Sam and his step-daughter (referred to as his daughter in the conveyancing document by which they received title to the real estate) militates in favor of the *212 continuation of the joint tenancy. The Administrator argues that the language found in the documents comprising the transaction, taken in their totality, requires a holding that the vendors intended to destroy their joint tenancy ownership. However, said argument is only in generalities and is not supported by authorities. We have studied those documents and do not discern any language therein contained that supports the Administrator's contention.
From what we have said it is apparent that the trial judge erroneously declared and applied the law, and the judgment in the favor of the Administrator must be reversed, Murphy v. Carron, supra, and the cause is remanded for entry of judgment decreeing Shirley Smith to be the sole owner of the sale proceeds.
All concur.
NOTES
[1] All statutory references are to RSMo. 1969, V.A.M.S.
[2] Section 400.3-104; Jones v. United Savings & Loan Association, 515 S.W.2d 869 (Mo.App.1974).
[3] This statute is a qualifying enactment in that it first removes the common law disqualification of witnesses by reason of interest, and it is a disqualifying enactment in that it then explicitly recognizes and imposes disqualification in certain instances, Fellows v. Farmer, 379 S.W.2d 842 (Mo.App.1964). The purpose of the disqualification "is to silence the voice of one of the parties to a litigated proceeding, where death has hushed into eternal stillness that of the other," Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071 (1918); also DeMott v. Dillingham, 512 S.W.2d 918 (Mo.App.1974).
[4] The judgment entered by the trial court was in the sum of $14,979.98 to each party, which is $4,000 in excess of the principal balance due. Our disposition makes it unnecessary to correct this mathematical error.
[5] The Buford and Baker cases generated scholarly discussion and criticism in 38 Minn.L.R. 466 and 20 Mo.L.R. 108. See also 2 Drake L.R. 76, 90.